## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SERGEI KOVALEV              :   **CIVIL ACTION**
                                 :
          v.                    :
                                 :   **No. 16-6380**
                                 :
CITY OF PHILADELPHIA., *et al.*    :

KEARNEY, J.                                       **September 22, 2017**

## MEMORANDUM

City agents called the sheriff to remove an allegedly disorderly citizen from a receptionist area of a city administrative office shortly following his challenge of the city's trash collection assessment for his property in a nearby public hearing. The citizen now sues the city and state actors for damages under the First and Fourteenth Amendments and for assault and infliction of emotional distress. The First Amendment prohibits the city from abridging citizens' freedom of speech, including restricting public access to locations where the public is invited to address the public's business. The First Amendment also prohibits the city from retaliating against citizens for exercising their First Amendment rights by making a false report of disorderly conduct.

A city and its state actor agents must balance a citizen's right of access to its workplaces with a need to limit disorder in the workplace. The state actors' permissible treatment of citizens in their workplace depends on the public nature of the workspace. A private office is generally not public space. Today, we address state actors' removal of a citizen for alleged disorderly conduct in a receptionist area of a small government office which does not host hearings or public meetings but is allegedly near the hearing room. No party adduces undisputed evidence of the activities or public business occurring in this reception area which would allow us today to review the constitutionality of state actors' removal of the citizen. No one seems to know how to

characterize this receptionist area. There is no clear guidance for the state actors under the First Amendment. With varying standards depending on the nature of the government office and no clearly established law guiding the state actors, we must grant them qualified immunity from liability on the First Amendment access claim. We also find the citizen failed to adduce evidence supporting his claims for the city's supervisory liability or for assault or intentional infliction of emotional distress.

Regardless of the public nature of the receptionist workplace, the state actors are not immunized from liability if they retaliate against a citizen's exercise of his First Amendment rights by falsely reporting disorderly conduct to have the sheriff remove the citizen from the receptionist area of a city office. We today face the classic he-said, she-said dispute with the citizen claiming he acted properly and the state actors made a false police report to remove him for retaliation because of his appeal of a trash collection assessment and the state actors claiming the citizen acted in a disorderly fashion and they did not retaliate in calling the sheriff.

In the accompanying Order, we grant the Defendants' motion for summary judgment as to all claims other than for First Amendment retaliation against the two state actors who called the police to remove the citizen from the reception area of a government workplace.

## I. Undisputed facts[1]

The City of Philadelphia imposed trash charges on Sergei Kovalev's property in 2013, 2014, and 2015.[2] Mr. Kovalev attended a Philadelphia County Office of Administrative Review (OAR) hearing in mid-October 2015 seeking exemption from the trash collection charges.[3] Five days later, the City's hearing master granted Mr. Kovalev an exemption from trash collection charges for only 2015.[4]

In response, Mr. Kovalev wrote to OAR's Executive Director Paula Weiss, criticizing the

2

hearing master and demanding a "prompt new hearing . . . unless City will express desire to settle this matter without many years of appeals and court hearings that would be including State and Federal Courts."[5] Mr. Kovalev addressed this letter only to Ms. Weiss.[6] Ms. Weiss responded advising him the OAR would schedule a rehearing.[7] The City scheduled the rehearing for December 10, 2015.[8]

Mr. Kovalev attended his December 10, 2015 rehearing before the Tax Review Board, located in the same City office building as the OAR.[9] The Board told him to provide supplemental materials, specifically letters from the IRS confirming his property is exempt from the charges for the years 2013 and 2014.[10] The Board could not take action until he produced these documents.[11] The Board took the issue under advisement for a period of 90 days to allow Mr. Kovalev time to gather the documents.[12] During the December 10 hearing, Mr. Kovalev never said he intended to appeal a later decision his property is not exempt for 2013 and 2014.[13]

After the December 10 hearing, Mr. Kovalev walked out of the hearing room to the OAR reception area, and spoke to the receptionist sitting at the front desk.[14] Mr. Kovalev asked the receptionist for a list of Board member names.[15] Mr. Kovalev never identified himself.[16] Yolanda Kennedy, an OAR employee, walked over to Ms. Weiss's office and told Ms. Weiss she intended to call the Sheriff's Office for assistance.[17] Ms. Weiss agreed with Ms. Kennedy's decision to call the Sheriff's Office.[18] Ms. Kennedy spoke to an unidentified Sheriff's Office employee.[19] Mr. Kovalev and Ms. Weiss did not witness Ms. Kennedy's phone call to the Sheriff's Office, and did not hear the substance of the conversation.[20]

In response to Ms. Kennedy's call, Sergeant Angelinel Brown, Deputy Sheriff Cody Sheriff, and Sheriff Andrea Sharamatew arrived at the reception area.[21] The officers' presence made Mr. Kovalev uncomfortable, and Mr. Kovalev decided to walk into the hallway outside of

3

the OAR.[22] Sgt. Brown followed Mr. Kovalev out of the office, walked firmly towards him, and escorted him to the elevators.[23] While escorting Mr. Kovalev, Sgt. Brown ordered Mr. Kovalev to "move on," "continue going," and "continue walking."[24] When Sgt. Brown and Mr. Kovalev approached the elevator, Sgt. Brown ordered Mr. Kovalev to "get into the elevator and leave."[25] Sgt. Brown did not follow Mr. Kovalev into the elevator.[26] During this first interaction, Sgt. Brown neither physically touched Mr. Kovalev, nor threatened Mr. Kovalev with violence.[27] Mr. Kovalev never saw Sgt. Brown reach for her weapon, and Sgt. Brown never removed her weapon from its holster.[28]

After taking the elevator down, Mr. Kovalev exited the building, but turned back and re-entered the building through a different entrance.[29] Mr. Kovalev took an elevator to the Sheriff's Office, and walked down the hallway towards the Sheriff's Office.[30] Sgt. Brown, standing at the entrance of the Sheriff's Office, saw Mr. Kovalev approaching.[31] Sgt. Brown walked towards Mr. Kovalev.[32] Mr. Kovalev walked back towards the elevator.[33] Sgt. Brown never physically touched Mr. Kovalev.[34] During this interaction, Sheriff Sheriff and another Sheriff's Office employee arrived.[35] Mr. Kovalev explained to the officers he wanted "to figure out what's going on" and he wanted "to get a report."[36] Sheriff Sheriff walked into the Sheriff's Office, and a few minutes later produced an incident report as Kovalev requested.[37] Sheriff Sheriff wrote the incident report using information provided by the unidentified Sheriff's Office employee who answered Ms. Kennedy's phone call.[38]

A month later, Mr. Kovalev returned to the OAR to provide supplemental materials in support of exempting his property.[39] The Board sent their decision to Mr. Kovalev several months later.[40] Mr. Kovalev appealed to the Court of Common Pleas.[41] Mr. Kovalev returned to the OAR to deliver papers relating to his appeal.[42] Mr. Kovalev has made several phone calls to

4

the OAR to ask questions about providing supplemental materials to the Board, and the status of his appeal.[43] The OAR provided Mr. Kovalev with the requested information.[44]

## II. Analysis

Mr. Kovalev claims Ms. Weiss, Ms. Kennedy, and Sgt. Brown violated his First Amendment right of access and right to information, Ms. Weiss and Ms. Kennedy retaliated against him for exercising his First Amendment rights by submitting a false report to the Sheriff's Office, Sgt. Brown assaulted him while escorting him from the OAR, Ms. Weiss and Ms. Kennedy's false report violated his substantive due process rights, Ms. Weiss and the City failed to train employees, and Ms. Weiss and Ms. Kennedy intentionally inflicted emotional distress upon him. Defendants argue Mr. Kovalev did not engage in protected activity under the First Amendment and the Defendants actions were reasonable, Sgt. Brown did not engage in willful misconduct and is immune as a state actor, Mr. Kovalev failed to show deliberate indifference to establish supervisory liability, and Mr. Kovalev failed to provide competent medical evidence in support of his emotional distress claim.

Defendants move for summary judgment on all of Mr. Kovalev's claims.[45] We find issues of material fact preclude summary judgment on Mr. Kovalev's First Amendment retaliation claim against Ms. Weiss and Ms. Kennedy, but all other claims must be dismissed.

### A. We grant summary judgment dismissing the First Amendment right of access and to information claim as the state actors are entitled to qualified immunity from liability on this claim.

Mr. Kovalev claims Ms. Weiss, Ms. Kennedy, and Sgt. Brown violated his First Amendment right of access and right to information. Mr. Kovalev argues Ms. Weiss and Ms. Kennedy submitted a report to the Sheriff's Office describing Mr. Kovalev as disorderly, which resulted in Sgt. Brown escorting him from the OAR and preventing him access to the Sheriff's

5

Office. Mr. Kovalev argues the OAR and Sheriff's Office are public spaces he had the right to access, and his escort from the OAR and blocked entry to the Sheriff's Office violates his First Amendment rights. Defendants argue the OAR and Sheriff's Offices are non-public fora, and Ms. Weiss, Ms. Kennedy, and Sgt. Brown's acted reasonably and in a viewpoint neutral manner. Defendants also argue their actions are subject to qualified immunity. Mr. Kovalev's claim fails because Ms. Weiss, Ms. Kennedy, and Sgt. Brown are entitled to qualified immunity.

The First and Fourteenth Amendments together prohibit the government from abridging freedom of speech, which "encompasses the positive right of public access to information and ideas," and the right to "some level of access" to public buildings where information is disseminated.[46] The First Amendment does not require unlimited access.[47] "The existence of a right of access to public property and the standard by which limitations upon such a right must be evaluated differ depending on the character of the property at issue."[48] The three classes of government property identified by the Supreme Court include: public fora, designated or limited public fora, and non-public fora.[49] In our February 28, 2017 Memorandum[50], we found the building where the OAR and Sheriff's Office is located is either a designated/limited public fora or a non-public fora.[51]

Designated or limited public fora "consist[] of 'public property which the state has opened for use by the public as a place for expressive activity.'"[52] Such fora include public libraries,[53] public university meeting places,[54] school board meetings,[55] municipal theaters,[56] and similar fora used by the public in a way intended by the government.[57] Once the City opens up this forum, it "is bound by the same limitations as exist in the traditional public forum context."[58] Content neutral time, place, and manner regulations must be narrowly tailored to serve a significant government interest.[59] Content based regulations must be necessary to serve a

compelling government interest, and the regulation must be narrowly tailored to achieve that end.[60]

Nonpublic fora "are not 'by tradition or designation fora for public communication . . . .'"[61] "In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."[62] "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated."[63]

In determining the type of forum Mr. Kovalev encountered, we observe: (1) the City's intent to open a non-traditional forum for expressive activity; (2) the extent to which the forum is used by the public; and (3) the nature of the forum along with its compatibility with expressive activity.[64]

There is a genuine issue of material fact whether the OAR office and Sheriff's Office are designated/limited public fora or non-public fora. Mr. Kovalev entered the building and the OAR reception area on multiple occasions.[65] Mr. Kovalev entered to get information about his case and the decision making process of the Board, and to provide supplemental materials in relation to his case.[66] Mr. Kovalev has never been cited for trespassing for entering the building, or told the public could not access the building, the OAR office, or the Sheriff's Office. The incident report completed by the Sheriff's Office cited to Mr. Kovalev's disorderly behavior as the reason for escorting him out of the OAR.[67] This suggests it may be permissible for members of the public to access the OAR and Sheriff's Office, if acting in an orderly manner. These circumstances also suggest the City's intent to open the forum for purposes of Board review and appeals administration. Defendants argue as a general proposition government workplaces are

non-public fora. The cases relied on by Defendants conduct factual analyses to categorize the workplace forum at issue, and do not stand for the proposition all government workplaces are non-public fora.[68] Viewing these circumstances in light most favorable to Mr. Kovalev, there is a genuine issue of material fact whether the fora at issue are designated/limited public fora or non-public fora.

There is also a genuine issue of material fact whether Mr. Kovalev acted in an orderly or disorderly manner while in the OAR. Mr. Kovalev asserts he calmly entered the office and asked for the names of the Board members.[69] Ms. Weiss and Ms. Kennedy describe Mr. Kovalev as loud, angry, agitated, and disruptive while in the reception area, and Ms. Weiss claim's Mr. Kovalev refused to leave.[70] Ms. Kennedy asserts Mr. Kovalev's behavior warranted a call to the Sheriff's Office for assistance, and Ms. Weiss agreed.[71] Sgt. Brown escorted Mr. Kovalev from the OAR and the Sheriff's Office in response to Ms. Kennedy's call.[72] No party adduced evidence of Mr. Kovalev's conduct beyond their own descriptions of events, creating a he-said-she-said scenario and raising an issue of fact regarding the appropriateness of Ms. Weiss, Ms. Kennedy, and Sgt. Brown's conduct under a First Amendment forum analysis.

Defendants argue Ms. Weiss, Ms. Kennedy, and Sgt. Brown are entitled to qualified immunity because the law did not put them on notice their conduct would be clearly unlawful. A government official is entitled to qualified immunity if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[73] "When a qualified immunity defense is asserted, a court must determine (1) whether the facts alleged by the plaintiff make out a violation of a constitutional right, and (2) whether that right was clearly established at the time of the injury."[74] "The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who

knowingly violate the law.'"[75]

Ms. Weiss and Ms. Kennedy are entitled to qualified immunity from Mr. Kovalev's First Amendment right of access and right to information claim. We are aware of no clearly established statutory or constitutional right to access the OAR reception area. After extensive discovery, we cannot determine whether the OAR reception area is either a designated/limited public fora or a non-public fora. Neither party cites evidence confirming the nature of this space. The standards are different depending on the nature of the fora. If we are unable to discern the First Amendment access rights and obligations in this unique office space, we cannot expect state actors to be aware of clearly established law governing the space.

Sgt. Brown is similarly entitled to qualified immunity from Mr. Kovalev's First Amendment right of access and right to information claim. We are aware of no clearly established statutory or constitutional right to access the OAR reception area and Sheriff's Office.[76]

Mr. Kovalev's First Amendment right of access and right to information claim must be dismissed as the state actors enjoy qualified immunity.

### B. Issues of fact preclude summary judgment on the First Amendment retaliation claim against Ms. Weiss and Ms. Kennedy.

Mr. Kovalev argues Ms. Weiss and Ms. Kennedy retaliated against him by falsely reporting he acted disorderly to the Sheriff's Office. Defendants argue Mr. Kovalev did not engage in protected activity, Ms. Weiss and Ms. Kennedy's conduct did not deter Mr. Kovalev, and Mr. Kovalev failed to demonstrate a causal connection between a protected activity and the false report.

In a First Amendment retaliation claim, Mr. Kovalev must show: "[he] engaged in a protected activity, (2) ...defendants' retaliatory action was sufficient to deter a person of

ordinary firmness from exercising his . . . rights, and (3) ... there was a causal connection between the protected activity and the retaliatory action."[77] Filing a false report could deter a person of ordinary firmness from exercising his or her First Amendment rights.[78]

There is a genuine issue of material fact whether Mr. Kovalev engaged in protected activity. As described above, Mr. Kovalev argues he acted calmly in the OAR office, and Ms. Weiss and Ms. Kennedy argues Mr. Kovalev acted disorderly by being loud, agitated, and disruptive. If Mr. Kovalev calmly entered the reception area of the office to ask for information regarding the Board and review process, a reasonable jury could find he engaged in protected activity. If Mr. Kovalev acted disorderly, a reasonable jury could find he did not engage in protected activity. The only evidence we have regarding Mr. Kovalev's conduct is conflicting self-serving descriptions from the parties. We must allow the jury to determine credibility at trial.

There is a genuine issue of material fact whether Ms. Kennedy and Ms. Weiss falsely reported Mr. Kovalev's behavior to the Sheriff's Office. Mr. Kovalev's conduct is in dispute, and the truth of Ms. Kennedy's report is in dispute.

There is also a genuine issue of material fact whether a causal connection exists between Mr. Kovalev's conduct and the retaliatory conduct. Mr. Kovalev argues Ms. Kennedy and Ms. Weiss retaliated against him for criticizing the hearing master in his letter, expressing his intent to appeal an adverse decision by the Board, and requesting Board member names.[79] Before Ms. Kennedy's call to the Sheriff's Office, Ms. Weiss knew the City rescheduled Mr. Kovalev's hearing, and knew Mr. Kovalev complained about the hearing master's behavior and outcome of his initial hearing.[80] Ms. Weiss also knew Kovalev requested names of Board members.[81] Ms. Weiss claims she did not know Mr. Kovalev to be the person who sent the letter, and did not

10

know the outcome of Mr. Kovalev's hearing.[82] Ms. Weiss claims she attempted to calm Mr. Kovalev by explaining he had the right to appeal an adverse decision by the Board.[83] This admission may demonstrate Ms. Weiss may have known Mr. Kovalev felt dissatisfied with the December 10 hearing outcome.[84] Ms. Kennedy asserts she did not know Mr. Kovalev's identity and did not know the outcome of Mr. Kovalev's hearing.[85] Both Ms. Weiss and Ms. Kennedy assert they agreed to call to the Sheriff's Office because Mr. Kovalev acted disorderly, not to retaliate against Mr. Kovalev's intent to appeal, criticism of the hearing master, or request for Board member names.[86] All parties rely on their own self-serving statements in support of their argument regarding intent to retaliate. This he-said-she-said scenario must be resolved on credibility at trial.

Ms. Kennedy and Ms. Weiss are not entitled to qualified immunity from Mr. Kovalev's First Amendment retaliation claim. It is clearly established filing a false report accusing another of violating the law is unlawful.[87] In *Thomas v. Independence Township*[88], our court of appeals held the plaintiff stated a claim for First Amendment retaliation where the defendant wrongfully accused the plaintiff of violating the law.[89] At least as early as 2006, when the court of appeals decided *Thomas*, the law was clearly established a government official could not falsely accuse a citizen of violating the law.

Kovalev's First Amendment retaliation claim against Ms. Weiss and Ms. Kennedy survives summary judgment.

## C. We grant summary judgment dismissing the assault claim for failing to adduce evidence of an assault.

Mr. Kovalev's claim for assault against Sgt. Brown fails. Mr. Kovalev claims Sgt. Brown assaulted him when Sgt. Brown escorted him from the OAR office, and prevented his access to the Sheriff's Office. Defendants argue Sgt. Brown's conduct is immunized, as a state

11

actor, because there is no evidence he engaged in willful misconduct.[90] We do not reach the issue of willful misconduct because Mr. Kovalev has not adduced evidence for a reasonable jury to find an assault.

Assault "occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact."[91] Mr. Kovalev's apprehension must be reasonable.[92]

Mr. Kovalev bases his claim on the two encounters with Sgt. Brown. These encounters are insufficient to establish an assault even with all factual inferences in Mr. Kovalev's favor. There is no evidence Sgt. Brown intended to cause imminent apprehension of contact. Sgt. Brown responded to a call from Ms. Kennedy describing Mr. Kovalev as disorderly.[93] In response, Sgt. Brown directed Mr. Kovalev to leave the City office and escorted him to the elevators.[94] Sgt. Brown did not follow Mr. Kovalev into the elevator.[95] Upon Mr. Kovalev's immediate re-entry into the City building, Sgt. Brown walked towards Mr. Kovalev to escort him out again.[96] Sgt. Brown stopped when Mr. Kovalev asked for an incident report, and Mr. Kovalev remained in the hallway for a few minutes until he received the report.[97] Sgt. Brown never threatened Mr. Kovalev, never reached for Mr. Kovalev, and never touched Mr. Kovalev.[98] A reasonable jury could not conclude Sgt. Brown intended to cause apprehension of imminent contact simply by walking towards Mr. Kovalev to escort him from the building.

Based on his admissions, Mr. Kovalev did not reasonably apprehend imminent contact. Mr. Kovalev claims he feared Sgt. Brown would walk into him, if he stopped walking away from Sgt. Brown.[99] Mr. Kovalev's description of Sgt. Brown's conduct contradicts the basis of his apprehension, and calls his claimed apprehension into question. In Mr. Kovalev's description of the first encounter, Sgt. Brown followed the pace Mr. Kovalev set, and stopped walking when Mr. Kovalev stopped walking.[100] In the second encounter, Sgt. Brown stopped escorting Mr.

Kovalev to the elevators once Mr. Kovalev requested an incident report, and Mr. Kovalev remained in the hallway for several minutes until he received the report.[101]

In light of all the surrounding circumstances, a reasonable jury could not find Mr. Kovalev reasonably apprehended imminent contact.[102]

### D. We grant summary judgment dismissing the substantive due process claim for failing to adduce evidence of conduct shocking the conscience and as duplicative of his First Amendment retaliation claim.

Mr. Kovalev's substantive due process claim against Ms. Kennedy and Ms. Weiss fails. Mr. Kovalev bases this claim on Ms. Kennedy and Ms. Weiss falsely reporting his behavior to the Sheriff's Office with the intent to retaliate against him, leading to Mr. Kovalev's escort from the building. Mr. Kovalev failed to adduce evidence to establish Ms. Kennedy and Ms. Weiss's conduct "shocks the conscience," and the claim is duplicative of his First Amendment retaliation claim proceeding to the jury.

"[T]o prove a violation of substantive due process in cases involving executive action, the plaintiff must show that the state acted in a manner that 'shocks the conscience.'"[103] "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level."

Relying on *Santiago v. Steinhart*[104] in our February 28, 2017 Memorandum[105], we explained filing a false report against another could "shock the conscience."[106] *Santiago*, similar to other substantive due process claims based on false reports, is distinguishable from the present case. Substantive due process claims based on false reports which survive dismissal are based on circumstances resulting in great harm to the plaintiff. In *Santiago*, the plaintiff possessed a recording of the defendant which directly contradicted the defendant's written report.[107] The plaintiff's employer used the false report to assess the plaintiff's fitness to continue working, and

to place the plaintiff on involuntary leave.[108]  In *Smith v. Phila. Dep't of Human Servs.*[109], the plaintiff brought a substantive due process claim based on a false report claiming the plaintiff sexually abused her son.[110]  The false report resulted in the plaintiff losing custody for her child.[111]

Mr. Kovalev's claim does not rise to the threshold level sufficient for a reasonable jury to conclude Ms. Weiss and Ms. Kennedy's conduct "shocks the conscience."  As a result of Ms. Kennedy's call to the Sheriff's Office, Sgt. Brown escorted Mr. Kovalev to the elevators and told him to leave the building, but Mr. Kovalev returned to the same building and OAR office on several occasions without issue.[112]  Mr. Kovalev re-entered the building immediately to obtain an incident report from the Sheriff's Office.[113]  Mr. Kovalev also made several phone calls to the OAR to obtain more information regarding his case, and the appeals process.[114]  Mr. Kovalev did not experience a harm equivalent to the plaintiffs in *Santiago* and *Smith*.  Based on the adduced evidence, a reasonable jury could not conclude Ms. Weiss's and Ms. Kennedy's conduct "shocks the conscience."

Alternatively, Mr. Kovalev's substantive due process claim against Ms. Weiss and Ms. Kennedy is duplicative of his First Amendment retaliation claim, and is barred by the "more specific provision rule."[115]  Under the more specific provision rule, "if a constitutional claim is covered by a specific constitutional provision . . ., the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process."[116]  The United States Supreme Court created the more specific provision rule due to the Court's reluctance to expand the concept of substantive due process.[117]  Mr. Kovalev's First Amendment retaliation claim against Ms. Weiss and Ms. Kennedy is identical to his Fourteenth Amendment substantive due process claim.  Both are based on Ms. Weiss and Ms. Kennedy's conduct in

14

falsifying a report to the Sheriff's Office with the intent to retaliate against Mr. Kovalev for engaging in protected activity. Mr. Kovalev's claim for retaliation is covered by a specific constitutional provision – the First Amendment – and Mr. Kovalev's claim must be analyzed under the "more specific provision."

### E. We grant summary judgment dismissing the supervisory liability claim under § 1983 for failing to adduce evidence demonstrating Ms. Weiss and the City acted with "deliberate indifference."

Mr. Kovalev's claim for supervisory liability under 42 U.S.C. § 1983 fails. Mr. Kovalev bases his claim on Ms. Weiss' and the City's failure to supervise and provide adequate training on dealing with the public and civil rights violations. Ms. Weiss and the City argue Mr. Kovalev failed to adduce evidence the failure to train constituted "deliberate indifference" to Mr. Kovalev's constitutional rights. Ms. Weiss and the City are correct. Mr. Kovalev failed to adduce evidence for a reasonable jury to conclude the failure to train constituted "deliberate indifference."

In *Monell v. Dep't of Soc. Servs. of City of N.Y.*[118], the Supreme Court held a municipality may be liable under § 1983 when it causes the constitutional violation at issue.[119] "A municipality is liable under § 1983 when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation."[120] Failure to train may be a basis for *Monell* liability if the failure to train "reflects deliberate indifference to constitutional rights."[121] "Establishing municipal liability on a failure to train claim under § 1983 is difficult. A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries."[122] "Mere proof that an injury could have been avoided if the municipal officer or employee 'had better or more training is not enough to show municipal liability' under a 'failure to train' *Monell* claim."[123]

A "pattern of similar constitutional violations by untrained employees" is typically necessary to show "deliberate indifference" because a decisionmaker, without notice a training program is deficient, "can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[124] "A pattern of violations puts municipal decisionmakers on notice that a new program is necessary, and '[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability.'"[125] Absent a pattern of violations, a failure to train claim may proceed where the constitutional violation is an "obvious" consequence of failing to provide certain training.[126] For a municipality's failure to train or supervise to constitute deliberate indifference, a plaintiff must show: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[127]

In denying a motion to dismiss, we earlier allowed Mr. Kovalev's § 1983 claim to discover whether the City and Ms. Weiss made a practice of condoning employees' wrongful exclusion of litigants from the OAR.[128] Mr. Kovalev shows Ms. Weiss, Ms. Kennedy, and Sgt. Brown lack training on § 1983.[129] But he does not show a history of employee mishandling or practice of condoning employees' wrongful exclusion of litigants from the OAR necessary to show "deliberate indifference." Ms. Kennedy and Ms. Weiss have not been subject to civil rights complaints before this case.[130] Since Ms. Kennedy began employment with the OAR in 1986, she has received only one corrective action for speaking too loudly on the phone.[131] Ms. Weiss has never faced disciplinary action while employed by the City.[132]

Sgt. Brown has not been subject to a civil rights complaint while employed at the Sheriff's Office for eleven years.[133] Mr. Kovalev cites a 2001 incident, while Sgt. Brown worked as a prison security guard, and the prison disciplined her with a warning for failing to exhaust all options to calm an inmate before the inmate attacked another guard.[134] This isolated incident nearly sixteen years ago, before Sgt. Brown joined the Sheriff's Office, coupled with Ms. Kennedy's corrective action for speaking loudly on the telephone are insufficient to establish a history of employee mishandling or practice of condoning the wrongful exclusion of litigants from the OAR.[135]

Without evidence Ms. Weiss and the City were on notice of deficiencies in their training program, a reasonable jury could not find Ms. Weiss and the City acted with deliberate indifference.

### F. We grant summary judgment dismissing the intentional infliction of emotional distress claim for failing to adduce competent medical evidence.

Mr. Kovalev's claim for intentional infliction of emotional distress fails. "A plaintiff seeking to establish intentional infliction of emotional distress must also support his claim with 'competent medical evidence,' because 'it is unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered emotional distress.'"[136] Mr. Kovalev failed to adduce competent medical evidence of experiencing emotional distress, therefore, his claim fails.[137]

## III. Conclusion

In the accompanying Order, we deny Ms. Weiss' and Ms. Kennedy's motion for summary judgment on the First Amendment retaliation claim arising from an alleged false report to the Sheriff's Office and grant all Defendants' motion as to the remaining claims. Genuine

issues of material fact preclude summary judgment on Mr. Kovalev's First Amendment retaliation claim against Ms. Weiss and Ms. Kennedy. We grant Defendants' motion for summary judgment dismissing Mr. Kovalev's claims under the First Amendment right of access and right to information, assault, substantive due process, supervisory liability, and intentional infliction of emotional distress claims.

---

[1] Our Policies require a Statement of Undisputed Material Facts be filed in support of a Rule 56 motion, as well as an appendix of exhibits. Defendants filed a Statement of Undisputed Material Facts at ECF Doc. No. 120-1 ("Defendants SUMF") and appendix at ECF Doc. No. 120-2 through 120-5. Defendants' SUMF is supported by citations to the appendix. Sergei Kovalev submitted a Statement of Undisputed Facts at ECF Doc. No. 126-3 ("Kovalev SUMF") and appendix at ECF Doc. No. 126-5 through 126-6. The Kovalev SUMF both objects to and provides additional facts not included in Defendants' SUMF. Of the one hundred and forty-eight purported facts and objections included in the Kovalev SUMF, only sixteen include citations to the record. References to the appendices shall be referred to by ECF number.

All parties submitted self-serving statements in support of their undisputed facts, and legal arguments. "As a general proposition, 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment.'" *Gonzalez v. Sec'y of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009)). "This rule has been extended to self-serving deposition testimony." *Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 549 (E.D. Pa. 2012) (citing *Irving v. Chester Water Auth.*, 439 F. App'x 125, 127 (3d Cir. 2011)). "However, the issue is not whether [the plaintiff] has relied solely on his own testimony to challenge the [m]otion[], but whether [the plaintiff's] testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit [the plaintiff's] testimony, despite its self-serving nature." *Id.* (citing *Gonzalez*, 678 F.3d at 263).

[2] *Id.*

[3] ECF Doc. No. 120-1 at ¶ 2.

[4] *Id.* at ¶¶ 1, 3.

[5] *Id.* at ¶¶ 2, 4, 5.

[6] *Id.* at ¶ 6.

[7] *Id.* at ¶¶ 8-9.

[8] *Id.* at ¶ 10.

[9] *Id.* at ¶ 13.

[10] *Id.* at ¶¶ 14-15.

[11] *Id.* at ¶ 14.

[12] *Id.* at ¶ 15.

[13] *Id.* at ¶ 16.

[14] *Id.* at ¶¶ 17-18.

[15] ECF Doc. No. 120-4 p. 53;  ECF Doc. No. 120-3 p. 29.

[16] *Id.* at ¶ 20.

[17] *Id.* at ¶ 22.

[18] *Id.* at ¶ 23.

[19] *Id.* at ¶¶ 26-27.

[20] *Id.* at ¶¶ 30, 45, 46.

[21] *Id.* at ¶ 47.

[22] *Id.* at ¶ 48.

[23] *Id.* at ¶¶ 49-51.

[24] *Id.* at ¶ 51.

[25] *Id.* at ¶ 52.

[26] *Id.* at ¶ 53.

[27] *Id.* at ¶¶54, 55.

[28] *Id.* at ¶ 56.

[29] *Id.* at ¶57.

[30] *Id.* at ¶ 58.

[31] *Id.* at ¶ 59.

[32] *Id.*

[33] *Id.* at ¶¶59-60.

[34] *Id.* at ¶ 61.

[35] *Id.* at ¶ 62.

[36] *Id.* at ¶ 63.

[37] *Id.* at ¶ 64.

[38] *Id.* at ¶ 66.

[39] *Id.* at ¶¶ 68, 75.

[40] *Id.* at ¶ 73.

[41] *Id.* at ¶ 74.

[42] *Id.* at ¶ 75.

[43] *Id.* at ¶ 76.

[44] *Id.*

[45] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On a motion for summary judgment, "we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Mancini v. Northampton Cnty.*, 836 F.3d 308, 313 (3d Cir. 2016) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their care for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If,

after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Id.*

[46] *Delaware Coal. For Open Gov't, Inc. v. Strine*, 733 F.3d 510, 513 (3d Cir. 2013) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575 (1980)); *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1255 (3d Cir. 1992).

[47] *Kreimer*, 958 F.2d at 1255.

[48] *Perry Educ. Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44 (1983).

[49] *Kreimer*, 958 F.2d at 1255 (quoting *Perry Educ. Ass'n*, 460 U.S. at 45).

[50] ECF Doc. No. 9.

[51] *Id.* at p. 8.

[52] *Kreimer*, 958 F.2d at 1255 (quoting *Perry Educ. Ass'n*, 460 U.S. at 45).

[53] *Id.* at 1261–62.

[54] *Widmar v. Vincent*, 454 U.S. 263, 267–68 (1981).

[55] *City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Employment Relations Comm'n*, 429 U.S. 167, 175–76 (1976).

[56] *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 555 (1975).

[57] *Kreimer*, 958 F.2d at 1259.

[58] *Id.* at 1256.

[59] *Perry Educ. Ass'n*, 460 U.S. at 45 (citing *U. S. Postal Serv. v. Council of Greenburgh Civic Associations*, 453 U.S. 114, 132 (1981)).

[60] *Id.* (citing *Carey v. Brown*, 447 U.S. 455, 561 (1980)).

[61] *Kreimer*, 958 F.2d at 1256 (quoting *Perry Educ. Ass'n*, 460 U.S. at 45) (brackets omitted).

[62] *Perry Educ. Ass'n*, 460 U.S. at 46 (citing *U. S. Postal Serv.*, 453 U.S. at 131 n.7).

[63] *Id.* (quoting *U. S. Postal Serv.*, 453 U.S. at 129).

[64] *Kreimer*, 958 F.2d at 1259–60.

[65] ECF Doc. No. 120-1 at ¶¶ 17, 75.

[66] *Id.* at ¶ 75.

[67] ECF Doc. No. 120-4 at p. 18.

[68] *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 804-806 (1985) (identifying relevant forum as charity drive, not the federal workplace, and conducting factual analysis of intent to designate as public forum, history of use, and nature of the forum); *Mead v. Gordon*, 583 F. Supp. 2d 1231, 1239 (D. Or. 2008) (analyzing forum's use to determine categorization of forum); *Mainstream Loudoun v. Bd. of Trs. of Loudoun Cnty. Library*, 24 F. Supp. 2d 552, 562-63 (E.D. Va. 1998) (analyzing government intent, extent of use, and nature of the forum).

[69] ECF Doc. No. 120-4 at p. 12, 14, 29.

[70] ECF Doc. No. 120-4 at p. 53-54; ECF Doc. No. 120-5 at p. 5.

[71] ECF Doc. No. 120-4 at p. 53; ECF Doc. No. 120-5 at p. 5.

[72] ECF Doc. No. 120-4 at p. 12-13, 18.

[73] *Mann v. Palmerton Area School District*, __ F.3d __, 2017 WL 4172055, at *2 (3d Cir. 2017) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Berg v. City of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) (quoting *Harlow*, 457 U.S. at 818).

[74] *Mann*, 2017 WL 4172055, at *2 (citing *Yarris v. Cnty. of Del.*, 465 F.3d 129, 140-41 (3d Cir. 2006)).

[75] *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)); *Mann*, 2017 WL 4172055, at *6 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

[76] Even assuming Sgt. Brown did violate Mr. Kovalev's constitutional rights, it would not be clear to a reasonable officer Sgt. Brown acted unlawfully. *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (citations omitted). In *Gilles*, an officer arrested a "campus evangelist" after the officer received a report of the speaker nearly creating a riot at a university campus. *Id.* at 202. The officer did not observe a riot, but the officer spoke to witnesses and arrested the speaker. *Id.* at 206. The speaker claimed the arrest violated his First Amendment rights. *Id.* at 203. Our court of appeals concluded qualified immunity barred the claim because the court found no reason why the officer's reliance on the witness accounts was unreasonable, and "[t]aking account of the entire episode and the information [the officer] possessed at the time, . . . it would not have been clear to a reasonable officer that [the speaker] did not engage in disorderly conduct." *Id.* at 207.

Similar to the officer in *Gilles*, Sgt. Brown and the other officers did not observe Mr.

Kovalev acting disorderly. ECF Doc. No. 120-4 at p. 18; ECF Doc. No. 120-3 at p. 13-14. Sgt. Brown relied on Ms. Kennedy's call seeking assistance, and Mr. Kovalev claims Sgt. Brown spoke to an OAR employee. ECF Doc. No. 120-4 at p. 12-13, 18; ECF Doc. No. 120-3 at p. 11. With this information, Sgt. Brown decided to escort Mr. Kovalev from the OAR reception area. ECF Doc. No. 120-4 at p. 13. We find no reason to conclude Sgt. Brown acted unreasonably by relying on the information presented. Given the situation and information presented, it would not be clear to a reasonable officer Mr. Kovalev did not act disorderly before Sgt. Brown's arrival. *Gilles*, 427 F.3d at 206. Therefore, it would not be clear to a reasonable officer the decision to escort Mr. Kovalev violated his constitutional rights.

[77] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)).

[78] *See R.K. v. Y.A.L.E. Sch., Inc.*, 621 F. Supp. 2d 188, 197 (D.N.J. 2008) (retaliatory conduct consisted of "filing a fraudulent truancy complaint against Plaintiffs with the Medford Township Police Department").

[79] ECF Doc. No. 120-3 at p. 29-30; ECF Doc. No. 126-6 at p. 47.

[80] ECF Doc. No. 120-2 at p. 14-16, 44.

[81] ECF Doc. No. 120-4 at p. 53.

[82] ECF Doc. No. 120-2 at p. 5.

[83] ECF Doc. No. 120-4 at p. 53.

[84] *Id.*

[85] ECF Doc. No. 120-2 at p. 18-19.

[86] ECF Doc. No. 120-4 at p. 53-54; ECF Doc. No. 120-5 at p. 5.

[87] *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

[88] 463 F.3d 285 (3d Cir. 2006)

[89] *Id.* at 296.

[90] 42 Pa.C.S. § 8550.

[91] *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. Ct. 1994) (citing RESTATEMENT (SECOND) OF TORTS § 21).

[92] *See D'Errico v. DeFazio*, 763 A.2d 424, 431 (Pa. Super. Ct. 2000) (citing *Cuciontti v.*

*Ortmann*, 159 A.2d 216, 217 (Pa. 1960)).

[93] ECF Doc. No. 120-4 at p. 12-13, 18.

[94] ECF Doc. No. 120-1 at ¶¶ 49-53.

[95] *Id.* at ¶ 53.

[96] *Id.* at ¶ 59.

[97] *Id.* at ¶¶ 63-64.

[98] *Id.* at ¶¶ 47-67.

[99] *Id.* at ¶¶ 50, 60.

[100] ECF Doc. No. 120-3, at p. 16.

[101] ECF Doc. No. 120-3, at p. 43-44.

[102] *See D'Errico*, 763 A.2d at 431 (citing *Cuciontti*, 159 A.2d at 217).

[103] *Schieber v. City of Phila.*, 320 F.3d 409, 417 (3d Cir. 2003) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998)).

[104] No. 89-2069, 1993 WL 410402 (S.D.N.Y. Oct. 13, 1993).

[105] ECF Doc. No. 9

[106] *Id.* at p. 13.

[107] *Santiago*, 1993 WL 410402, at *2.

[108] *Id.*

[109] No. 04-1940, 2005 WL 525403, at *6 (E.D. Pa. 2005).

[110] *Id.*

[111] *Id.*

[112] ECF Doc. No. 120-1 at ¶ 75.

[113] *Id.* at ¶¶ 57-67

[114] *Id.* at ¶ 76.

[115] *Koelsch v. Cnty. of Lancaster*, No. 11-5681, 2012 WL 4459799, at *6 (E.D. Pa. 2012) (quoting *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997)); *Traylor v. Lanigan*, No. 16-7691, 2017 WL 2364189, at *7 n.8 (D.N.J. 2017) (dismissing substantive due process claim based on same conduct underlying the plaintiff's First Amendment compelled speech claim).

[116] *Koelsch*, 2012 WL 4459799, at *6 (quoting *Lanier*, 520 U.S. at 272 n.7).

[117] *Traylor*, 2017 WL 2364189, at *7 n.8 (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998)).

[118] 436 U.S. 658 (1978).

[119] *Id.* at 694; see also *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

[120] *Mann*, 2017 WL 4172055 at *7.

[121] *Wood v. Williams*, 568 F. App'x 100, 105 (3d Cir. 2014) (quoting *City of Canton*, 489 U.S. at 388, 392).

[122] *Reitz v. Cty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) (citing *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1030 (3d Cir. 1991)).

[123] *White v. Brommer*, 747 F. Supp. 2d 447, 463 n.42 (E.D. Pa. 2010) (quoting *Kline ex rel. Arndt v. Mansfield*, 255 F. App'x 624, 629 (3d Cir. 2007)); *see also City of Canton*, 489 U.S. at 391 ("Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct.").

[124] *Mann*, 2017 WL 4172055, at *7 (quoting *Connick v. Thompson*, 563 U.S. 51, 62 (2011)); *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Connick*, 563 U.S. at 62).

[125] *Thomas*, 749 F.3d at 223 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)).

[126] *Connick*, 563 U.S. at 63.

[127] *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (footnote omitted).

[128] ECF Doc. No. 9, p. 22.

[129] ECF Doc. No. 120-4 at p. 52; ECF Doc. No. 120-5 at p. 4, 16.

[130] ECF Doc. No. 120-4 at p. 54; ECF Doc. No. 120-5 at p. 5.

[131] ECF Doc. No. 120-5 at p. 5-6. In the Kovalev SUMF, Mr. Kovalev asserts Ms. Kennedy has been criticized in her employment evaluations in 1996, 2010, and 2012 for lacking professionalism. ECF Doc. No. 126-3, at ¶¶ 124-126. Mr. Kovalev does not adduce evidentiary support for these statements.

[132] ECF Doc. No. 120-4 at p. 44.

[133] ECF Doc. No. 120-5 at p. 17-18.

[134] ECF Doc. No. 126-6 at p. 41.

[135] Kovalev cites to Sgt. Brown's driving history containing one reckless driving charge in 2004, and one speeding violation in 1994. ECF Doc. No. 126-3, at ¶¶ 115-16. We do not see relevance in these driving violations from thirteen and twenty-three years ago to the theory Ms. Weiss and the City showed deliberate indifference to Mr. Kovalev's constitutional rights.

[136] *Lawson v. Pa. SPCA*, 124 F. Supp. 3d 394, 409 (E.D. Pa. 2015) (quoting *Bock v. CVS Pharmacy, Inc.*, No. 07-412, 2008 WL 3834266, at *2 (E.D. Pa. 2008)) (granting summary judgment for failure to provide supporting competent medical evidence).

[137] *Id.*